## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CONVENTION OF STATES ACTION**, <br><br>     Plaintiff, <br><br> v. <br><br> **WILLIAM F. GALVIN**, in his official capacity as Secretary of the Commonwealth of Massachusetts, <br><br>  and <br><br> **MARIE D. MARRA**, in her official capacity as Director of the Lobbyist Division for the Secretary of the Commonwealth, <br><br>     Defendants. | Civil Action No._____ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. § 1983

### PRELIMINARY STATEMENT

1.      This is a civil rights action to protect Convention of States Action ("COSA") and its supporters from a serious and unjustifiable infringement of their First Amendment associational rights. Defendants, who enforce Massachusetts' lobbying disclosure laws, are demanding that COSA publicly disclose the identity and personal information of each and every nationwide supporter who gave COSA more than $15. But COSA is a national social welfare organization that raises millions of dollars from thousands of supporters across the country. None of them gave money to support, or likely even knew about, COSA's minimal grassroots lobbying activities in the state. Indeed, Massachusetts' share of COSA's national lobbying expenses was only $1,624. This is less than *one one-thousandth* of the amount COSA raised from its nationwide list of

supporters. This means that even if every single contributor had consciously given to aid the Massachusetts effort, they each gave the proportional equivalent of pennies. The Commonwealth's demand to publicly disclose virtually this entire nationwide list advances no conceivable state interest. It will, however, chill COSA's association with its supporters. A core COSA cause—promoting a Convention of States under Article V of the United States Constitution—generates strong reactions across the ideological spectrum. This includes retaliation and harassment against COSA supporters. Now, thanks to a small print and electronic media buy that was seen by a handful of Massachusetts residents, the Commonwealth would expose all of these supporters, all across the United States, to retaliation.

2.      The Supreme Court in *Americans for Prosperity Foundation v. Bonta* held that the First Amendment right to expressive association protects against compelled disclosure of an organization's supporters unless the government can (1) articulate a sufficiently important interest and (2) show that disclosure is both (i) substantially related to, and (ii) narrowly tailored to serve, that interest. *Bonta*, 141 S. Ct. 2373 (2021). *Bonta* controls. As shown below, the Commonwealth cannot make the *Bonta* showing because its disclosure demand makes it an extreme outlier. The Plaintiff asks this Court to declare that under the First and Fourteenth Amendment of the United States Constitution, Mass. Gen. Laws ch. 3, § 44 (the "Disclosure Mandate Statute") cannot be applied to compel disclosure of COSA's donors; to enjoin the Secretary and his officials from enforcing the Disclosure Mandate Statute or seeking penalties for non-compliance; and to award attorneys' fees under 42 U.S.C. § 1988.

## THE PARTIES

3.      Plaintiff, COSA, is a 501(c)(4) non-profit organization based in Houston, Texas. COSA's primary purpose is to advance social welfare by developing and advocating legislation to promote self-governance, including by advocating across the country to call for a Convention of

States under Article V of the U.S. Constitution. The vast majority of this activity is not direct lobbying—direct communications with legislators using a registered lobbyist. Instead, it is commonly referred to as "grassroots lobbying," which is communicating with the general public that urge *them* to support proposed legislation and to make that support known to their legislators. Thousands of supporters from across the country, including some in Massachusetts, contribute money to COSA to advance its mission and purpose.

4.      Defendant William F. Galvin is sued in his official capacity as the Secretary of the Commonwealth of Massachusetts. In that capacity, Secretary Galvin is responsible for enforcing Massachusetts' lobbying disclosure laws, including the Disclosure Mandate Statute. The Secretary is charged with inspecting the statements required by the Disclosure Mandate Statute, determining if the statement conforms to the law, and notifying groups of any delinquencies. Mass. Gen. Laws ch. 3, § 48. The Secretary also has the authority to refer violations to the Massachusetts Attorney General, who may take criminal or civil action in response. *Id.*

5.      Defendant Marie D. Marra is sued in her official capacity as the Director of the Lobbyist Division for the Secretary of the Commonwealth of Massachusetts. In that capacity, Director Marra is responsible for enforcing the challenged disclosure requirements, compelling compliance, and assessing penalties for non-compliance. In her official capacity, Director Marra notified COSA that its registration statement was delinquent and/or did not comply with Massachusetts law, and further threatened to impose late fees if COSA did not disclose its donors.

## JURISDICTION AND VENUE

6.      This case raises claims under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C § 1983. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND AND BASES FOR RELIEF

**I.     COSA's Activities Nationally and in Massachusetts.**

8.     COSA develops and advocates for legislation to promote self-governance and related issues, including by lobbying to call for a Convention of States under Article V of the United States Constitution. COSA is funded primarily by donations from individuals who support these goals. COSA has thousands of supporters across the United States who donate more than $15, and it raises millions of dollars for its work.

9.     COSA does not employ an executive or legislative agent in Massachusetts or with responsibility for Massachusetts. As a nonprofit entity that is exempt from taxation under I.R.C. Section 501(c)(4), its primary purpose is to advance social welfare and not to engage in commercial transactions or make profits. Although a 501(c)(4) entity can engage in candidate-related activity without losing its exempt status, COSA has not made any contributions to any political candidate or committee in Massachusetts.

10.     In Massachusetts, during the relevant period, COSA's expenditures were limited to grassroots lobbying: encouraging members of the public to support a legislative resolution that would have the Commonwealth call for a Convention of States under Article V of the United States Constitution and asking them to contact their elected officials to make their support known. It is this activity that triggered COSA's obligation to file any report in Massachusetts.

11.     COSA's total expenses for its grassroots lobbying attributable to Massachusetts between January 1, 2021, and June 30, 2021, were $1,624.53.

12.     That figure represents direct mailings that were sent to Massachusetts residents, print materials and text messages that advocated for a convention,  as well as the pro rata share of a nationwide social media ad campaign attributable to Massachusetts, based on the number of

people that responded to the advertisement by signing a petition encouraging legislators to call a Convention of States.

13.    None of COSA's thousands of $15-or-more supporters in Massachusetts or across the country were solicited to support lobbying in Massachusetts, including the mailings or the ad buy, $1,624.53 of which was attributable to the Commonwealth.

14.    No donors were informed of the direct mailings or social media messaging in advance.

15.    No donors made a donation for the purpose of supporting COSA's grassroots lobbying in Massachusetts.

## II.    The Defendants' Enforcement Efforts.

16.    Because COSA had expended more than $250 on lobbying in the Commonwealth, it was required to file a Statement of Expenditures pursuant to the Commonwealth's lobbying disclosure statutes.

17.    The relevant provision is the Disclosure Mandate Statute. It requires that "any group or organization . . . not employing an executive or legislative agent which as part of an organized effort, expends in excess of two hundred and fifty dollars during any calendar year to promote, oppose, or influence legislation . . . shall register with the state secretary by rendering a statement, under oath . . . an itemized statement."  Mass. Gen. Laws ch. 3, § 44.

18.    The Disclosure Mandate Statute requires that the itemized statement include "a listing of the names and addresses of every person, group or organization from whom fifteen dollars or more was contributed during the year *for the objectives hereinabove stated*." *Id.* (emphasis added).

19.     The objectives listed in the Disclosure Mandate Statute ("the objectives hereinabove stated") include:

> promote, oppose, or influence legislation, or the governor's veto or approval thereof, or to influence the decision of any officer or employee of the executive branch or an authority, including, but not limited to, statewide constitutional officers and employees thereof, where such decision concerns legislation or the adoption, defeat or postponement of a standard, rate, rule or regulation pursuant thereto, or to do any act to communicate directly with a covered executive official to influence a decision concerning policy or procurement . . . .

*Id.*

20.     On July 12, 2021, COSA made its filing ("July 12 Filing").

21.     A true and correct copy of the July 12 Filing is attached hereto as Exhibit A and is expressly incorporated by reference into this Complaint.

22.     COSA did not disclose the names of any of its $15-or-more donors, in Massachusetts or anywhere else, because, as it noted on the filing, it did not accept any "contributions for the designated and limited objective of advancing legislation"—that is, lobbying—"in Massachusetts." *See* Ex. A. Not only did COSA's decision appear at the time to comport with the language of the statute, COSA knew it could not disclose its entire nationwide list of $15-or-over donors, as that was reasonably likely to trigger reprisals from those who do not agree with COSA's mission.

23.     On August 4, 2021, the Director of the Lobbyist Division of the Secretary's Office, Marie Marra, notified COSA ("August 4 Letter") that in the eyes of the Commonwealth, COSA's understanding of the text of the Disclosure Mandate Statute was wrong.

24.     A true and correct copy of the August 4 Letter from Director Marra is attached hereto as Exhibit B and is expressly incorporated by reference into this Complaint.

25.    COSA's Statement of Expenditures was being returned, Ms. Marra said, because "[The Disclosure Mandate Statute] requires that the report must include the name and address of every person, group, or organizations from whom fifteen dollars or more was contributed toward the objectives of the organization." Ex. B.   Marra's August 4 Letter stated that COSA's "corporation objectives" were not limited to Massachusetts; thus, the August 4 Letter demanded the disclosure of any donor that contributed more than $15 to COSA for COSA's objectives anywhere in the United States, regardless of the purpose for which the donation was given and regardless of whether the donor had any knowledge of or desire to aid the Massachusetts spending. *See id.*

26.    The August 4 Letter requested that COSA "correct and resubmit within ten days[,]" warning that "failure to do so may result in the imposition of late fees[.]" *Id.* Those late fees "shall be in the amount of $50 per day up to the twentieth day and an additional $100 per day for every date after the twentieth day until the statement is filed." Mass. Gen. Laws ch. 3, § 44. The Commonwealth's fees for COSA's failure to disclose its nationwide list of $15-or-more supporters have already dwarfed the amount of the expenditure.

27.    The Commonwealth's interpretation ignores the language of the statute by failing to limit the required disclosures to individuals and corporations who gave funds to be spent in Massachusetts to influence Massachusetts policy. *See* Mass. Gen. Laws ch. 3, § 44 ("The statement of the group or organization shall also include a listing of the names and addresses of every person, group or organization from whom fifteen dollars or more was contributed during the year for the *objectives hereinabove stated*." (emphasis added)). The "objectives hereinabove stated" in that section include:

> "an organized effort . . . to promote, oppose, or influence legislation, or the governor's veto or approval thereof, or to influence the decision of any officer or

employee of the executive branch or an authority, including, but not limited to, statewide constitutional officers and employees thereof, where such decision concerns legislation or the adoption, defeat or postponement of a standard, rate, rule or regulation pursuant thereto, or to do any act to communicate directly with a covered executive official to influence a decision concerning policy or procurement."

*Id.*

28.     Instead, the Commonwealth has told COSA that it requires disclosure of every individual and entity that contributed more than $15 to COSA regardless of where or for what purpose those contributions were intended to be, or were actually, spent.

29.     The Commonwealth's interpretation would lead to massive and unprecedented disclosure of personal information that has absolutely no relation to the Commonwealth or any legitimate interest of the Commonwealth.

30.     COSA, knowing that its donors had faced reprisal, intimidation, and threats when their connection to the organization was disclosed, had grave concerns regarding the wholesale disclosure of its donors. COSA also understood that, if disclosure were required in the manner the Commonwealth suggests, its donors would be less likely to associate with COSA or to contribute their funds to it for fear of having those actions publicly disclosed.

31.     On October 1, 2021, COSA responded to Director Marra ("October 1 Letter"), requesting a clarification of the August 4 Letter.

32.     A true and correct copy of the October 1 Letter is attached hereto as Exhibit C and is expressly incorporated by reference into this Complaint.

33.     In the October 1 Letter, COSA asked Director Marra to either "(1) confirm that COSA need only disclose those donors who contributed funds for the purpose of lobbying in Massachusetts, and that the COSA Statement of Expenditures as filed is therefore acceptable; or (2) confirm that your positions remains that COSA must disclose every one of its donors on its

Statement of Expenditures, regardless of whether those donors contributed funds for the purpose of lobbying in Massachusetts . . . ."  Ex. C.

34.     The October 1 Letter requested a response within 15 days (by October 16, 2021) and stated that if no response was received, COSA "will have no choice but to conclude that your earlier interpretation and threat of enforcement under chapter 3 stands." *Id.*

35.     To date, COSA has received no response from Director Marra, or from anyone else in her office, to the October 1 Letter.

36.     Based on the Secretary's nonresponse, COSA and its members face imminent penalties, sanctions, and loss of their speech and associational rights secured by the First Amendment based on the Commonwealth's interpretation of the Disclosure Mandate Statute and their threat of enforcement based on that misguided interpretation. COSA also is unsure if it can continue to participate in lobbying in Massachusetts if it comes at the cost of its donors' associational rights.

## III.     Compelled Donor Disclosure Is Likely to Cause Harm to COSA and Its Donors, Including by Chilling Speech and Association.

37.     COSA's stance on calling for a Convention of States under Article V of the United States Constitution has generated both strong support and, primarily among those with whom COSA has not yet had an opportunity to engage in reasoned discussion, strong opposition. Support and opposition to a Convention of States cuts across partisan and ideological lines. When supporters' affiliation with COSA becomes publicly known, they have been subjected to reprisal, ridicule, intimidation, and threats.

38.     For example, one COSA affiliate lost their long-held job after their involvement with COSA was made known. That volunteer had to take a substantial reduction in pay to find a new job.

39.     Other affiliates have faced verbal harassment while volunteering, and one was reported by her employer after her affiliation was disclosed to the Department of Homeland Security as a "risk" to her company and country as a whole. Because of instances like this, supporters insist on the protection of their identities and have indicated they will reconsider future contributions if COSA must disclose their identities.

40.     The compelled disclosure of COSA donors and affiliates is likely to subject those donors and affiliates to reprisal, ridicule, intimidation, and threats and to deter future contributions and affiliation. Disclosure would have a significant chilling effect on donors' speech and association, harming both COSA and its donors.

41.     This is particularly true because the same statute which Defendants rely on to compel COSA to disclose the names and addresses of its donors also requires that these disclosures be made available for public inspection. *See* Mass. Gen. Laws ch. 3, § 44 ("The state secretary shall prescribe and make available the appropriate statement forms which after being completed and filed with the secretary shall be organized alphabetically according to the name of the group *and such files shall be open and accessible for public inspection during normal business hours*." (emphasis added)).

42.     The low threshold for compelled disclosure is likely to prevent and deter many donors from choosing to contribute in a financially meaningful way out of fear of retaliation.

43.     In addition to fears regarding reprisal arising from public disclosure, the speech of current and potential supporters is chilled by the Commonwealth's threat of enforcement. Would-be supporters are wary of contributing to COSA and current supporters have warned that they will reconsider their contributions if the prospect of disclosure arises.

**IV.    The Commonwealth's Interest in Donor Disclosure and Its Effort at Narrowly Tailoring Its Statutes to Advance That Interest.**

44.    The Disclosure Mandate Statute is not narrowly tailored to serve any sufficiently important government interest because it forces political associations to disclose the names and home addresses of supporters whose money does not influence, nor is intended to influence, the associations' speech about Massachusetts legislation.

45.    To the extent Massachusetts has any interest in learning who pays for grassroots lobbying—which consists of appeals to Massachusetts citizens to support legislation, and to then convince their elected officials to do the same—it is fully vitiated by requiring groups like COSA to come forward and state that they have paid for the ads.

46.    The interest in such disclosures of responsibility for grassroots lobbying-related expenditures, however, is weak in comparison to other types of "informational interests" in the public-policy arena. For example, it is much weaker than the interest in learning who supports candidate campaigns. In the latter context, it is at least conceivable that large contributions to candidates could be exchanged for official action once those candidates are in office—*quid pro quo* corruption. Yet in the case of grassroots lobbying, no candidate is benefited at all, which completely removes the opportunity for *quid pro quo* corruption. Instead, all of the communication takes place in the public eye. Grassroots lobbying groups openly seek to motivate the public to put forth the time and energy to contact their own representatives—another open and public activity. The process of grassroots lobbying is laborious and indirect, and will only be effective if the public is sufficiently motivated to exercise their rights to petition their representatives. At most, then, the state has a weak interest in allowing voters to know who has sponsored these issue-oriented communications, but there is also a strong countervailing tradition of allowing anonymous speech where the cause is unpopular.

47.     The state interest is even weaker, however, in learning where the person who paid for the grassroots lobbying has turned for his or her *own* financial support: that is, the second tier of support. And where this second tier of supporters was not even solicited, and did not even give, to support the grassroots lobbying at issue, we cannot even infer that those individuals support the particular message. In that case, there is absolutely no state interest in forcing disclosure of their names and home addresses.

48.     Further, even if one were to assume for the sake of argument that each and every COSA supporter was actually aware that a small amount of his or her monetary support might be used for a nationwide expenditure, and might then end up being attributable *pro rata* to Massachusetts (and to be clear, this is not in fact the case), each donor's proportional share of the Massachusetts-related cost would range from a few dollars to a few fractions of a penny. Learning the names and private information of these dollar and penny supporters of a group that engages in mere grassroots lobbying provides no useful information to the Commonwealth.

49.     The Disclosure Mandate Statute is also over-inclusive given its exceedingly low threshold of $15. Mass. Gen. Laws ch. 3, § 44. The name and address of each and every small-dollar donor has no informational value. Suppose someone hopes to judge the merits of a grassroots message by learning who supports the message, rather than by actually considering its content. Perhaps some marginally useful information can be gleaned by learning the name of the group that actually organized the campaign. But one learns nothing by uncovering the additional fact that $20 or $100 was given to the group by a particular private citizen in another state. One would have to scour public records to learn about the other interests and beliefs of the $20 supporter, and further, to determine whether and how the grassroots message aligns with the $20 supporter's other views. The "information value" of learning these small donor names is simply non-existent.

50.     It is far more likely that Massachusetts' list of names and home addresses will be used to "doxx" or attack supporters in their own communities. And indeed, Massachusetts' disclosure regime can only be viewed as punitive: spend more than $250 in Massachusetts, and you will risk public disclosure of the name and address of every person in the country who has supported you with more than $15, regardless of whether their donations had anything to do with the Massachusetts spending. Whatever interest Massachusetts is trying to vindicate by forcing disclosure of those who pay for grassroots lobbying, such a nationwide disclosure requirement is wildly over-inclusive. By way of comparison, the Supreme Court in *Bonta* was dealing with a list of far more substantial donors: those who give more than $5,000 to be listed on Schedule B to I.R.S. Form 990 (a nonprofit's annual federal information return).  *See Bonta*, 141 S. Ct. 2373. Even at this level, the Court found no substantial informational interest.

51.     Massachusetts is over-inclusive in a third way. It provides no "off ramp" for supporters to protect their right to associational privacy. That is, there is no way for a supporter to meaningfully contribute to COSA without being disclosed in Massachusetts. There is no way for a donor to meaningfully contribute by limiting their donation to avoid disclosure. Massachusetts provides no exception for those individuals who may donate but opt out of their contribution being used for lobbying efforts in Massachusetts, as the Secretary's interpretation of the statute requires *all* donors anywhere in the country to be disclosed, regardless of their intent when they give, and regardless of for what the funds were actually used.

52.     The Disclosure Mandate Statute's facial over-inclusivity is particularly apparent when applied to COSA's operations. Approximately 0.06% of COSA's expenditures went towards lobbying in Massachusetts, yet the Commonwealth asserts an interest in the names and addresses of COSA's donors that supported the other 99.94% of its operations. And while the

Commonwealth may have some interest—albeit a weak one—in identifying and recording the fact that COSA expended funds for grassroots lobbying in Massachusetts, it has little or no interest in identifying, recording, and disclosing the names and home addresses of individual COSA donors whose money is neither intended to impact, nor actually does impact, Massachusetts in any way.

53.     Despite this massive overbreadth, the Disclosure Mandate Statute is also strangely underinclusive. It does not apply to any group or organization that meets five specific requirements:

> This section shall not apply to any group or organization that (i) does not employ an executive or legislative agent; (ii) does not realize a profit; (iii) does not make a contribution, as defined in section one of chapter fifty-five, to a political candidate or committee; (iv) does not pay a salary or fee to any member for any activities performed for the benefit of the group or organization; and (v) expends two thousand dollars or less during any calendar year to promote, oppose, or influence legislation, or the governor's veto or approval thereof, or to influence the decision of any office or employee of the executive branch or an authority, including, but not limited to, statewide constitutional officers and employees thereof, where such decision concerns legislation or the adoption, defeat or postponement of a standard, rate, rule or regulation pursuant thereto, or to do any act to communicate directly with a covered executive official to influence a decision concerning policy or procurement.

Mass. Gen. Laws ch. 3, § 44.

54.     Neither the Secretary nor Director Marra has applied this exemption to COSA. On its face, the exception would not reach COSA because COSA fails one of the five requirements: requirement (iv). COSA pays a salary to officers and employees.

55.     Still, Massachusetts would apparently disclaim *any* interest in disclosure by COSA if COSA conducted exactly the same Massachusetts activities, and raised exactly the same funds from exactly the same supporters, but was able to run its national office with volunteers instead of paid employees. If Massachusetts truly believes citizens have a compelling informational interest in knowing the name and home address of each person who gives more than $15 to a group that

funds grassroots lobbying, it makes no sense to create blind spots merely because a group is able to operate with volunteers instead of paid employees. This suggests that the governmental interest is not truly informational. Instead, it seeks to impose substantial burdens and chill support for certain types of nonprofit lobbying groups that rely on professional, paid staff.

56.     This combination of over-inclusiveness and under-inclusiveness undermines any purported state interest, and at minimum shows that there is no tailoring—let alone narrow tailoring.

## CLAIMS FOR RELIEF

### Count I (42 U.S.C. § 1983)
### Violation of the First and Fourteenth Amendments to the United States Constitution

57.     Plaintiff repeats, re-alleges, and incorporates the allegations in paragraphs one through 53 as if the same were set forth verbatim herein.

58.     The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  *See* U.S. CONST. amend. I.

59.     The First Amendment applies to Massachusetts by virtue of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV.

60.     The First Amendment creates a "right to associate for the purpose of speaking," *Rumsfeld v. FAIR*, 547 U.S. 47, 68 (2006), and "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Bates v. Little Rock*, 361 U.S. 516, 523 (1960) ("It is hardly a novel perception that compelled

disclosure of affiliation with groups engaged in advocacy may constitute an effective restraint on freedom of association." (brackets, ellipsis, & citation omitted)).

61.     The Supreme Court has not drawn a distinction between compelling disclosure of an organization's donors and an organization's members and treats them interchangeably. *Buckley v. Valeo*, 424 U.S. 1, 66 (1976).

62.      When the government attempts to compel disclosure of donors to advocacy groups, the Government must meet at least "exacting scrutiny," meaning that it must articulate a sufficiently important interest and show that the disclosure requirement is both substantially related to, and narrowly tailored to serve, that interest. *Bonta*, 141 S. Ct. at 2388. "Exacting scrutiny is triggered by state action which may have the effect of curtailing the freedom to associate, and by the possible deterrent effect of disclosure." *Id*. (quotations and citations omitted).

63.     "Narrow tailoring is crucial where First Amendment activity is chilled–even if indirectly– '[b]ecause First Amendment freedoms need breathing space to survive.'" *Id*. at 2384 (citing *NACCP v. Button*, 371 U.S. 415, 433 (1963)).

64.     The Commonwealth's Secretary's demanding the disclosure of names and addresses of any donor of more than $15 to COSA without limitation infringes upon COSA and its donors' rights to free speech and association under the First and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

65.     The Secretary, through Defendant Marra, has threatened to impose monetary penalties on COSA for failing to disclose its donors in compliance with their demands.

66.     However, the Secretary's overbroad interpretation of the statute in the area of grassroots lobbying extends far beyond any legitimate interest of the Commonwealth. The disclosure requirement applies to all individuals and organizations who spend more than $250 in

a calendar year on lobbying activities in Massachusetts. The Defendants' interpretation, which they have attempted to enforce against COSA, requires the disclosure of all donors nationwide who have contributed $15 or more, regardless of whether the purpose of their contribution was related to lobbying in Massachusetts or actually had any effect on Massachusetts. The statute cannot plausibly be considered narrowly tailored to a Massachusetts interest.

67.     During the relevant timeframe, no person or entity has given money to COSA for the purpose of lobbying in Massachusetts.

68.     COSA is now faced with an impossible choice: it can either accede to the Secretary's demands and accept the infringement of its and its members' constitutional rights to free speech and association, or it can refuse disclosure and face imminent harsh penalties imposed by the Commonwealth as a result. Regardless of which option it chooses, COSA will be irreparably harmed, for the "loss of First Amendment freedoms, for even minimal amounts of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

69.     The Defendant's compelled disclosure requirement is unconstitutional on its face because the regime fails exacting scrutiny in a substantial number of its applications judged in relation to its plainly legitimate sweep.

70.     Alternatively, the compelled disclosure requirement is unconstitutional as applied to COSA.

71.     COSA has no adequate remedy at law to prevent the threatened harm.

## DEMAND FOR JURY TRIAL

To the extent allowed by law, COSA demands its right to have this matter tried by a jury.

## PRAYERS FOR RELIEF

Plaintiff COSA respectfully requests that this Court enter judgment in its favor and against the Defendants as follows:

1.     Declare that the disclosure regime that the Secretary attempts to enforce against COSA under the Disclosure Mandate Statute violates the First Amendment to the United States Constitution;

2.     Enjoin the Secretary of the Commonwealth, his officers, agents, and employees, including Defendant Marra, and all those acting in concert with him from requiring COSA to file a Statement of Expenditures that includes information about any of its donors who have not contributed money to COSA for the purpose of lobbying in the Commonwealth of Massachusetts.

3.     Enjoin the Secretary of the Commonwealth and all those acting in concert with him from taking any action to implement or enforce penalties provided in Mass. Gen. Laws ch. 3, § 44—the Disclosure Mandate Statute—and Mass. Gen. Laws ch. 3, § 48, against Plaintiff.

4.     Award Plaintiff its costs and attorneys' fees under 42 U.S.C. § 1988; and

5.     Award Plaintiff any additional or different relief as the Court deems just and proper.


Dated: December 28, 2021                    Respectfully submitted,

                                            **ASHCROFT LAW FIRM**

                                            /s/ *Michael J. Sullivan*
                                            Michael Sullivan (MA Bar #487210)
                                            J. Christopher Amrhein, Jr. (MA Bar #703170)
                                            200 State Street, 7th Floor
                                            Boston, MA 02109
                                            Tel: (617) 573-9400
                                            msullivan@ashcroftlawfirm.com
                                            camrhein@ashcroftlawfirm.com

**GRAVES GARRETT, LLC**

<u>/s/ *Edward D. Greim*</u>
Edward D. Greim (Mo. Bar #54034)*
Matthew R. Mueller (Mo. Bar #70263)*
1100 Main Street, Suite 2700
Kansas City, MO 64105
Phone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
**Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff Convention of States Action*

## <u>VERIFICATION</u>

I, Robert Kelly, declare as follows:

1.      I am General Counsel to Convention of States Action ("COSA"), the Plaintiff in the present case.

2.      I have personal knowledge of COSA, its activities, and its intentions, including those set out in the foregoing *Verified Complaint*, and if called on to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* concerning COSA, its activities, and its intentions are true and correct. 28 U.S.C. § 1746.

Executed on December 28, 2021.

/s/ *Robert Kelly*
Robert Kelly
General Counsel, COSA